*TAGGED OPINION*



**ORDERED in the Southern District of Florida on February 12, 2018.**

Laurel M. Isicoff
Chief United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| In re | CASE NO. 14-34877-BKC-LMI |
| GPC MIAMI INC., | Chapter 7 |
| Debtor. _____/ | |
| MARCIA T. DUNN, Chapter 7 Trustee for the Estate of GPC Miami Inc., | ADV. CASE NO. 16-01607-BKC-LMI |
| Plaintiff, vs. | |
| MERCANTILE COMMERCEBANK, N.A., and Banco Mercantil, S.A.C.A. d/b/a MERCANTILE C.A. BANCO UNIVERSAL, | |
| Defendants and | |
| MERCANTIL COMMERCEBANK, N.A., | |

      Cross-Claimant/
      Third Party Claimant

vs.

BANCO MERCANTIL S.A.C.A. d/b/a
MERCANTIL, C.A. BANCO UNIVERSAL,

      Cross-Defendant

JESUS ALBERTO DAZA and MACRO PC
CM.,

      Third Party Defendants.
_____/

## MEMORANDUM OPINION AND ORDER GRANTING CROSS-DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

This matter came before me on November 9, 2017, upon the Motion for Judgment on the Pleadings and Incorporated Memorandum of Law (the "Motion") (ECF #74) filed on September 15, 2017, by Cross-Defendant Banco Mercantil, S.A.C.A. d/b/a Mercantil, C.A. Banco Universal ("Banco Mercantil"). On September 22, 2017, Mercantil Commercebank, N.A. ("Mercantil Commercebank") filed a response to the Motion (the "Response") (ECF #79).

I have considered the Motion, the Response and arguments of counsel. As set forth below, the Motion is GRANTED.

## BACKGROUND FACTS

On November 10, 2014, GPC Miami, Inc. (the "Debtor") filed a chapter 7 bankruptcy. Marcia Dunn (the "Trustee" or the "Plaintiff") was appointed to serve as chapter 7 Trustee. On November 8, 2016, the Plaintiff filed this adversary proceeding (the "Complaint") (ECF #1). The Complaint seeks to avoid and recover from both Banco Mercantil and Mercantil Commercebank[1]

---

[1] Banco Mercantil and Mercantil Commercebank are affiliated banking institutions and subsidiaries owned by the same Venezuelan holding company: Mercantil Servicios Financieros, C.A.

a fraudulent transfer under 11 U.S.C. §§ 544 and 550 pursuant to Florida's Uniform Fraudulent Transfer Act - Fla. Stat. §§726.105(1)(a), 726.105(1)(b), 726.106(1), and 726.108(1)(a). According to the allegations in the Complaint, on December 12, 2010[2], Jesus Daza ("Daza"), the president and sole owner of the Debtor, opened a personal checking account at Mercantil Commercebank (the "Mercantil Commercebank Account"). Daza funded the Mercantil Commercebank Account with an $800,000 wire transfer (the "Transfer") from an account at TD Bank, N.A. (the "TDB Account"). The TDB Account belonged to the Debtor.

On the same day that the Mercantil Commercebank Account was opened, Daza (i) used $700,000 from the Mercantil Commercebank Account to purchase a certificate of deposit (the "CD") at Mercantil Commercebank and (ii) executed a Deposit Assignment and Security Agreement (the "Agreement") pursuant to which Daza pledged the CD as collateral to secure the obligations of Daza and MACRO PC, C.A. ("Macro PC")[3] under a purported loan[4] owed to Mercantil Commercebank's affiliate bank, Banco Mercantil (the "Purported Loan").

On December 16, 2016, Mercantil Commercebank filed an answer to the Complaint; it also filed a third-party complaint against Daza and Macro PC[5] and a cross-claim against Banco Mercantil (ECF #13).

The basis of the cross-claim against Banco Mercantil is for common law indemnity (the

---

[2] Although the Complaint alleges the transfers occurred on December 12, 2010, the documents attached as exhibits to the Complaint appear to suggest the alleged transfers occurred on December 2, 2010.

[3] The Complaint alleges that the Agreement refers to Daza as a shareholder of Macro PC but Daza, in his deposition, testified that Macro PC is a company with which the Debtor does business but not that he has any ownership interest in Macro PC. For purposes of this opinion it does not matter whether and to what extent Daza was a shareholder of Macro PC.

[4] The parties dispute whether a loan was ever issued to Daza secured by the CD as collateral, or whether the loan was repaid. In either case, it is undisputed that Banco Mercantil released the CD (a requirement of the Agreement) and Mercantil Commercebank liquidated the CD. After the funds were liquidated, Daza withdrew the funds from the Mercantil Commercebank Account. These facts become relevant in my consideration of the motions for summary judgment filed by each of Mercantil Commercebank (ECF #75) and Banco Mercantil (ECF #73), which will be the subject of a separate order.

[5] Neither Daza nor Macro PC responded to the Complaint or to the third party complaint.

"Cross-Claim"). In the Cross-Claim, Mercantil Commercebank argues that: (1) Mercantil Commercebank did not direct or provide any instructions to Daza with regards to the Transfer but was directed by Daza who was entitled to direct the disposition of funds from the Mercantil Commercebank Account; (2) Daza made the Transfer to provide a benefit to himself and Macro PC by pledging the CD as security for the Purported Loan; (3) Banco Mercantil benefited from the Transfer by receiving a security interest in the CD; (4) Mercantil Commercebank is without fault; (5) Banco Mercantil is at fault because it benefited from the improper Transfer; and (6) Mercantil Commercebank is entitled to common law indemnity from Banco Mercantil.

In the Motion, Banco Mercantil argues that the Cross-Claim must be dismissed because there is no cause of action for indemnity under sections 544, 548[6], or 550 of the Bankruptcy Code or under Florida's Uniform Fraudulent Transfer Act. It also argues that common law indemnity does not exist in the context of a fraudulent transfer claim. Further, Banco Mercantil argues that in order for a common law indemnity claim to exist under Florida law there must be some sort of vicarious, constructive, derivative, or technical liability, none of which is present in a fraudulent transfer claim.

Mercantil Commercebank responds that it is not relying on sections 544, 548, or 550 of the Bankruptcy Code or Florida's Uniform Fraudulent Transfer Act but rather that its claim of common law indemnity arises from *Houdaille Indus., Inc. v. Edwards*, 374 So. 2d 490 (Fla. 1979), which sets forth the elements under Florida law of common law indemnity. Mercantil Commercebank argues that Florida law does not preclude the application of common law indemnity in a fraudulent transfer case.

---

[6] The Complaint does not seek relief under 11 U.S.C. §548.

## JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §157(b). The parties have agreed that the adversary proceeding is a core proceeding as that term is defined in 28 U.S.C. §157(b)(2)(A), (E), and (O). Venue of this adversary proceeding in this district is proper under 28 U.S.C. §1409(a).

## STANDARD OF REVIEW

"Judgment on the pleadings is appropriate where no issue of material fact remains unresolved and the moving party is entitled to judgment as a matter of law." *Mergens v. Dreyfoos*, 166 F.3d 1114, 1117 (11th Cir.1999). Judgment on the pleadings is governed by Federal Rule of Civil Procedure 12(c), which is made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7012. Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard for granting a motion for judgment on the pleadings is the same as for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *In re First NLC Fin. Servs., LLC*, 396 B.R. 562, 565 (Bankr. S.D. Fla. 2008). A motion for judgment on the pleadings is appropriate when all material allegations of fact are admitted in the pleadings and only questions of law remain. *Pincus v. Speedpay, Inc*., 2017 WL 1153872 (S.D. Fla. 2017).

## DISCUSSION

Common law indemnity allows an innocent party, who is nonetheless liable to another, to "[shift] the entire loss from one who, although without active negligence or fault, has been obligated to pay, because of some vicarious, constructive, derivative, or technical liability, to another who should bear the costs because it was the latter's wrongdoing for which the former is

5

held liable." *Houdaille Indus., Inc. v. Edwards,* 374 So. 2d at 493.[7] Thus, in order for a claim for common law indemnity to apply, the party seeking indemnity must be totally without fault, and the party's liability "is solely constructive or derivative and only against one who, because of his act, has caused such constructive liability to be imposed." *Id.*

Subsequent to *Houdaille*, many courts have held that *Houdaille* also requires the existence of a "special relationship" between the indemnitor and the indemnitee, in the absence of which there can be no claim for common law indemnity regardless of whether the other elements are satisfied. However, as the Fourth District Court of Appeal noted in *Diplomat Properties Ltd. P'ship v. Tecnoglass, LLC,* 114 So. 3d 357, 362 (Fla. 4th DCA 2013), "[t]he term 'special relationship' merely describes a relationship which makes a faultless party 'only vicariously, constructively, derivatively, or technically liable for the wrongful acts' of the party at fault." This interpretation is consistent with the holding in *Houdaille,* in which the Supreme Court of Florida observed "[a]lthough courts of this state have consistently premised the allowance of indemnity upon a special relationship between the primary defendant and the third-party defendant, confusion seems to have arisen over the use of the labels employed to designate the conduct of the parties which will permit the party seeking indemnity to recover. Regardless of what specific terms are employed…what they are really speaking of is fault or no fault." *Houdaille*, 374 So. 2d at 493 (citations omitted). *But see Dade Cty. Sch. Bd. v. Radio Station WQBA,* 731 So. 2d 638 (Fla. 1999) (the Supreme Court was bound by the jury's finding of lack of a special relationship where the jury's verdict form was not challenged).

Of course, if the alleged ultimate wrongdoer is exonerated, there is no claim for damages based on common law indemnity even if the party seeking recovery under common law

---

[7] Florida law applies because the Complaint is based on the Florida Uniform Fraudulent Transfer Act.

6

indemnity incurs litigation costs. *See, e.g., Amisub of Florida, Inc. v. Billington*, 560 So. 2d 1271, 1272 (Fla. 3d DCA 1990).

Banco Mercantil argues that a claim for common law indemnity cannot apply to a fraudulent transfer claim. Banco Mercantil relies on several cases in support of its position. However, the cases cited by Banco Mercantil are distinguishable, and a review of the relevant case law, most importantly, cases decided in Florida, make clear that a claim for common law indemnity could possibly arise in the case of a fraudulent transfer claim, albeit, for the reasons set forth below, not in this case.

The primary case upon which Banco Mercantil relies is *Nicolaci v. Anapol*, 387 F.3d 21 (1st Cir. 2004). In that case, the First Circuit held that the district court properly dismissed the appellant's (Nicolaci) complaint seeking recovery based on a common law right to indemnity for liability resulting from a fraudulent transfer claim. However, the holding was based on Massachusetts law[8], which the First Circuit observed had, at that point in time, only recognized common law indemnity in personal injury tort actions. The First Circuit declined to accept Nicolaci's request to extend equitable indemnity to fraudulent transfer actions. "Federal courts sitting in diversity should be cautious about 'push[ing] state law to new frontiers.' In the absence of authority supporting a common law right to indemnity in fraudulent transfer cases, we find no basis for the Nicolaci's claim." *Id*. at 27 (citations omitted). Unlike Massachusetts law, Florida law does not limit common law indemnity to personal injury torts and therefore, not only is *Nicolaci* not binding authority, but also it is not persuasive authority.

The second case on which Banco Mercantil relies is *Richard Bertram & Co. v. Sun Bank/Miami, N.A.*, 503 So. 2d 965 (Fla. 3d DCA 1987). In that case, the Third District Court of

---

[8] The case before the district court was based on diversity jurisdiction; therefore Massachusetts law applied to resolve the issue.

Appeal reviewed the trial court's judgment on the pleadings with respect to a plaintiff's claims for contractual and common law indemnity stemming from the plaintiff's acceptance of what was found to be a fraudulent transfer from a bankrupt corporation. The Third DCA upheld the lower court's ruling that the contractual indemnification clause at issue did not cover the transfer. Then, and without any explanation other than citing a string of cases including *Houdaille*, the court further held "the plaintiff has utterly no cause of action against the defendants for common law indemnity or fraud." *Id*.[9]

The third case upon which Banco Mercantil relies is *Erickson v. Erickson*, 849 F. Supp. 453 (S.D.W. Va. 1994). In *Erickson,* not a bankruptcy case, the district court held that the estate of an ex-husband, which ex-husband with alleged fraudulent intent, conveyed an asset in which his ex-wife was entitled to an interest, was not entitled to indemnity from the ex-wife's lawyers for her claims. Putting aside the absurdity of the claim on its face, the court held that under West Virginia law, implied (*ie.* common law) indemnity is not available to one who is at fault. Since the party seeking indemnity (the estate on behalf of the alleged fraudster) could not be "without fault", the indemnity claim failed. That holding is actually consistent with Florida law. Nothing in *Erickson* suggests a blanket rule that there can never be a claim of common law indemnity when a fraudulent transfer is alleged, except, obviously, if the person seeking indemnity is the party that actually made the fraudulent transfer.

The final case upon which Banco Mercantil relies is *Compton v. Century Exploration New Orleans, Inc. (In re Dunhill Resources, Inc.)*, 2006 WL 2090208 (Bankr. S.D. Tex. 2006).

---

[9] The only other case cited by the Third DCA that addressed common law indemnity rather than fraud held that a party actually responsible for an injury does not have a cause of action for indemnity against a joint tortfeasor, which is a correct statement of the law.

In this unpublished opinion, the bankruptcy court rejected an indemnification claim made by a contractor who was paid by a debtor to perform services for a non-debtor entity which services did not benefit the debtor. The contractor sued the subcontractors, some of whom received payment out of the funds paid to the contractor, for indemnification and contribution. Again, while it may be obvious why the contractor was not entitled to indemnification, the court held that as is the case in Florida, the contractor was liable for the transfers, and therefore not entitled to claim indemnity.

I have reviewed the cases cited by the *Dunhill* court and do not find either case to be fully dispositive of the Motion. In *Neill v. Borreson (In re John Peterson Motors, Inc.)*, 56 B.R. 588 (Bankr. D. Minn. 1986), the court sustained dismissal of a third party complaint filed by the recipient of a preference payment (Borreson) against a third party (Peterson) who, Borreson claimed, was the actual person, rather than the debtor, who owed Borreson for the debt paid by the debtor (Peterson's company). In determining whether the bankruptcy court had jurisdiction over the third party complaint, the court considered whether the third party complaint, which sought recovery under indemnity or contribution, stated a cause of action. In answering this question in the negative with respect to the indemnity claim, the court looked at Minnesota law. First, the court noted, it would need to find an implied contract between Peterson and Borreson. The bankruptcy court held that this issue is one that should be determined by a state court, not the bankruptcy court. Second, as the bankruptcy court observed, in order for the trustee to recover on a preference claim against Borreson, the trustee would have to prove that Borreson received payment on account of a debt owed *by the debtor*. So, if Borreson lost on the preference claim the court would have had to have found that the debtor was the obligor, and, that Borreson was liable for the transfer. Conversely, if Borreson won, then he would not have to return the

funds to the trustee and would have no claim against Peterson. So, under these circumstances, the court found there were no equitable grounds for an indemnity claim. *Id* at 595.[10]

Ultimately, the court in *Peterson* came to the same conclusion as the First Circuit in *Nicolaci*. In holding that the dispute between Borreson and Peterson was better resolved in state court, the court wrote "[i]f indemnification were appropriate in this instance, it would at best be a question peculiar to an area of evolving state law, and this is true regardless of whether recovery in the main action is for a preference under 11 U.S.C. §547 or a fraudulent transfer under 11 U.S.C. §548." *Borreson,* 56 B.R. at 596.

The other case cited by the *Dunhill* court could have been dispositive of the motion if the Complaint had been framed differently. In *Cassier v. Sterling National Bank & Trust Co. of N.Y. (In re Schick)*, 223 B.R. 661 (Bankr. S.D.N.Y. 1998), Judge Bernstein held that an initial transferee of a fraudulent transfer did not have a non-contractual - implied - indemnity claim against a subsequent transferee, because such a claim would contravene the express defenses available to a subsequent transferee under 11 U.S.C. §550(b)(1).[11] "If the law implied a right to indemnity in favor of an initial transferee against a subsequent transferee, the latter would bear the same risks and liabilities as the former. Since this is precisely what section 550(b) is designed to prevent, [the initial transferee/cross-plaintiff's] theory must be rejected." *Id.* at 663. Thus, if the Complaint sought relief against Mercantil Commercebank as the initial transferee and from Banco Mercantil as a subsequent or mediate transferee then possibly the analysis in *Cassier* would dispose of the Motion in its entirety.

---

[10] The *Dunhill* court held that the holding in *Peterson* would apply equally to a fraudulent transfer claim, but, that is not the case, as liability based on lack of reasonably equivalent value is not the same as liability founded on payment on account of a claim owed by the debtor.

[11] "The trustee may not recover under section 11 U.S.C. §550 (a)(2) of this section from--
(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided".

10

However, I do not need to determine whether *Cassier* is dispositive of any portion of the Complaint. Nor do I have to decide whether Florida law would allow common law indemnity in a fraudulent transfer action because under the facts alleged in the Complaint and in the Cross-Claim, the cross-plaintiff, Mercantil Commercebank, is not entitled to the relief.[12] The Complaint, as written, seeks direct, not derivative relief against both Mercantil Commercebank and Banco Mercantil, that is, the Trustee alleges that either is directly liable for the Transfer. Stated differently, Mercantil Commercebank is not liable to the Trustee (assuming the Trustee is successful) solely due to its relationship with Banco Mercantil. The Trustee has alleged direct liability of Mercantil Commercebank irrespective of whether the Trustee is successful in her recoveries against Banco Mercantil. Consequently, there is no special relationship, as that term is defined by *Houdaille* and *Diplomat*. So, as a matter of law, Mercantil Commercebank cannot rely on common law indemnity as a source of recovery against Banco Mercantil.

Moreover, like the preference claims in the *Borreson* case, assuming the Complaint survives the motions for summary judgment, the Trustee will either be able to establish that (1) under the applicable statute the Trustee has a claim against Mercantil Commercebank in which case Mercantil Commercebank's liability is direct rather than derivative, that is, Mercantil Commercebank is "at fault" under the statute's provisions; or (2) the Trustee's case will fail, in which case Mercantil Commercebank would not have a claim against Banco Mercantil.

---

[12] There is nothing in Florida law that, *per* se, limits application of common law indemnity in a case involving a fraudulent transfer. The only case in Florida cited by the parties is *Bertram*, and as I already noted, *Bertram* does not constitute a rejection of the concept, but rather, a rejection of the cause of action under the facts of that case. Unlike in Massachusetts, in Florida, common law indemnity has been recognized in many types of cases other than personal injury torts. *See, eg., Dade Cty. Sch. Bd*, 731 So. 2d 638 and *Diplomat Properties*, 114 So. 3d 357. In each case common law indemnity was sought in connection with breach of contract actions. Thus, I do not have to go where the courts in *Nicolaci* and *Borreson* declined to go and extend Florida state law beyond its current posture. However, I am not foreclosing the possibility that there could be facts involving fraudulent transfer claims in which the elements of *Houdaille* could be met.

Thus, even if a claim for common law indemnity can be made in a case arising from a fraudulent transfer claim, there are no grounds to make a claim in this case. For the reasons set forth in this opinion, the Motion is GRANTED. Attorney for Banco Mercantil is directed to submit a final judgment on the Cross-Claim consistent with this ruling.

# # #

Copies furnished to:
Peter Levitt, Esq.
Victor Rones, Esq.

*Attorney Levitt is directed to serve a copy of this order on all interested parties and file a certificate of service.*